UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JUSTINE BELLAMY, ) | Civil Action No.: 4:07-2727-RBH-TER |

JUSTINE BELLAMY,          )   Civil Action No.: 4:07-2727-RBH-TER
                    )
     Plaintiff,      )
                    )
     -vs-       )   **REPORT AND RECOMMENDATION**
                    )
JOE DOWLING, in his individual and official )
capacity as director of career and technology for )
Horry County School District, )
RONNIE BURGESS, in his individual and official )
capacity as principal of St. James High School, )
and HORRY COUNTY SCHOOL DISTRICT, )
                    )
     Defendants.   )
_____ )

## I.     INTRODUCTION

This is an employment discrimination case. Plaintiff alleges causes of action for racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., deprivation of her rights and privileges in violation of 42 U.S.C. § 1981, and violations of equal protection and free speech rights under 42 U.S.C. § 1983. Presently before the court is Defendant's Motion for Summary Judgment (Document # 47).[1] Because the Plaintiff had filed the action pro se,[2] a Roseboro order was entered on June 10, 2008, to advise the Plaintiff how to respond to the Motion for Summary Judgment. Plaintiff's new counsel appeared on August 19, 2008, and on behalf of the Plaintiff he filed a Response in Opposition to the Motion for Summary Judgment (Document # 60).

_____

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

[2] On October 9, 2007, Attorney William Gary White, III, appeared on behalf of the Plaintiff until May 12, 2008. See Order to Stay (Document #52).

The Defendants filed a Reply to the Response on August 29, 2008 (Document # 64).  On October 6,

2008, this court entered an order directing the Plaintiff to file a copy of her deposition as well as any

other evidence cited in her Response within ten days (Document # 70).  The Plaintiff failed to file any

evidence in this case in response to the court's order.[3]  Thus, the Plaintiff rests on the evidence placed

in the record by the Defendants.  A hearing was held January 22, 2009, and counsel for all parties were

present.

## II.    FACTUAL HISTORY IN THE LIGHT MOST FAVORABLE TO PLAINTIFF

### Plaintiff's Induction Contract

Justine Bellamy is an African-American female.  The Horry County School District ("the

District") hired Plaintiff under an induction contract in August 2005 for the 2005-2006 school year and

assigned her to work as a cosmetology teacher at St. James High School ("SJHS").  (Burgess Aff. ¶ 2.)

Defendant Ronnie Burgess, an African-American and the Principal of SJHS at the time, interviewed

the Plaintiff and made the decision to hire her.  (Burgess Aff. ¶¶ 1-2.)  Prior to teaching cosmetology

at SJHS, Plaintiff worked at Regis Corporation in a salon. (Bellamy Dep. pp. 8-9.)

Induction contracts are offered to novice teachers for one year, and these teachers are provided

comprehensive guidance and support throughout the first year by an assistance team which includes

a mentor teacher and a building administrator.  (Burgess Aff. ¶ 4.)  A teacher's performance is

evaluated through the Assisting, Developing, and Evaluating Professional Teaching ("ADEPT")

system established by the South Carolina Department of Education.  Id.  As part of the ADEPT

process, the District uses a comprehensive system for evaluating professional teaching that includes

---

[3]  Plaintiff's counsel filed an unsigned Affidavit of Justine Bellamy on January 20, 2009. However, the court is not considering this untimely, unsigned affidavit for purposes of this motion.

Teacher Performance Areas ("TPAs"). Id. If a teacher is successful as defined by the District, then the teacher is recommended for an annual contract. Id. Alternatively, if the teacher is unsuccessful as defined by the District, the District may continue his or her employment on an annual diagnostic contract or terminate the induction contract teacher's employment. (Burgess Aff. ¶ 4); (Docket Entry # 47, Attachment 1.)

### School Administrators and Teachers

Ronnie Burgess, an African-American, was the Principal of SJHS during the entire school year of 2005-2006, the time during which Plaintiff was employed. Joe Dowling, a Caucasian, was the Assistant Principal of SJHS from August 2005 through January 2006. (Dowling Aff. ¶ 1.) Dowling also held the job position of Director of Career and Technology from 2000 until 2006. Id. Dowling is currently the Principal of SJHS and has served in that capacity for two years; he began serving as Principal of SJHS prior to the 2006-2007 school year. (Dowling Aff. ¶ 9.) Tammy Moreland, a Caucasian, became the Assistant Principal of SJHS in November 2005, and she is currently serving in that job position. (Moreland Aff. ¶¶ 1, 3.) Beth Cox, a Caucasian, is a veteran teacher with the District, and she was assigned to mentor the Plaintiff. (Cox Aff. ¶¶ 1-2.) Andrea McKelvey, an African-American, is a teacher at SJHS. (McKelvey Aff. ¶ 1.) During the 2005-2006 school year, McKelvey taught English across the hall from the Plaintiff's classroom. (Bellamy Dep. p.49.) The Superintendent of the District for the school year 2005-2006 was Dr. Gerrita Postlewait. (Burgess Aff. ¶ 8.)

### The Administration's Concern Regarding Plaintiff's Performance

During the Fall of 2005, Dowling was to observe the Plaintiff's performance and progress, and he performed several brief "walk through" observations of the Plaintiff's classroom and one extended formal observation. (Dowling Aff. ¶ 3.) In the Plaintiff's first few months of employment, the SJHS

administration developed concerns regarding her performance. (Burgess Aff. ¶ 3; Dowling Aff ¶ 3.) Principal Burgess served on Plaintiff's ADEPT assistance team and noted that Plaintiff appeared to exhibit difficulties in classroom management as evidenced by incidents involving unruly student behavior, damage to student supplies and materials, and failure to pursue means of providing structure to class. (Burgess Aff. ¶ 3; Bellamy Dep. p. 36.) Additionally, Plaintiff displayed deficiencies in setting yearly progress for students and analyzing and computing student grades. (Burgess Aff. ¶ 3.) As a result, the administration assigned Beth Cox to mentor and assist Plaintiff with these particular problem areas and arranged for her to receive assistance from Betty Mar Little, the school's Curriculum Specialist. (Burgess Aff. ¶ 3; Bellamy Dep. p. 92.) Cox recalled that the Plaintiff experienced difficulties in making the transition from the commercial hair care industry to an educational instruction environment. (Cox Aff. ¶ 3.) Plaintiff recalled that Cox had meetings with her to discuss what improvements and changes the Plaintiff should make. (Bellamy Dep. p. 92.) According to the District, Plaintiff continued to struggle with developing adequate classroom management skills; had difficulty calculating and entering student grades into the system; had difficulty assessing student progress and identifying student deficiencies; and could not seem to master long-range planning. (Cox Aff. ¶ 3; Moreland Aff. ¶ 4.) The Plaintiff does not dispute that in the Fall of 2005 the administrators gave her an ADEPT plan to bring about improvement in her job performance. (Bellamy Dep. at p. 28.) Apart from any evaluation, McKelvey, who taught across the hall from the Plaintiff, noticed that the Plaintiff's students often attempted to challenge her authority and that the Plaintiff experienced problems with classroom management. (McKelvey Aff. ¶ 2.)

### Plaintiff's December 2005 Preliminary Evaluation

On or around December 15, 2005, Plaintiff was administered her standard preliminary evaluation and received an overall rating of "Unsatisfactory." (Dowling Aff. ¶ 4.) Her team of

-4-

evaluators consisted of Principal Burgess and Assistant Principal Dowling.  While Burgess stated that "he had the opportunity to . . . evaluate her performance," it is not clear whether Burgess personally conducted any "walk through" or formal observations of the Plaintiff's classroom or whether he relied on Dowling's observations.  (Burgess Aff. ¶¶ 3, 5.)  According to the District's evaluation process, two or more areas judged as "needs improvement" equate to an overall "Unsatisfactory" rating, and Plaintiff received a "needs improvement" rating in three out of the five TPAs. (Burgess Aff. ¶ 5, Exh. A; Bellamy Dep. p. 24-25.)  Specifically, Plaintiff was cited for needing improvement in the following areas: TPA 1 – the teacher obtains, analyzes, and interprets baseline data and sets measurable student achievement goals that ensure adequate yearly progress for all students; TPA 3 – the teacher engages students in meaningful work; and TPA 4 – the teacher gathers evidence of student progress toward goals, analyzes results, and summarizes findings and also reviews the evidence and the analysis with the administrator or team. (Burgess Aff. ¶ 5, Exh. A.)  The written evaluation listed examples of why the Plaintiff scored "needs improvement" for TPAs 1, 3, and 4.  (Burgess Aff., Exh. A.)  Plaintiff testified that she was *not* given an "Improvement Performance Plan."[4]  (Bellamy Dep. p. 27.)  Plaintiff stated that her reviewers wrote on her ADEPT[5] what she needed to do; for example, "read a book on disciplinary, Harry Wong."  Id. at p. 27.  Plaintiff acknowledged that she was supposed to improve her skills with respect to students' grades and the requirements for certification.  Id. at 28.  Specifically, she needed to learn the "InteGrading Pro System" for tracking student grades, and she testified that she

---

[4] As a result of her unsatisfactory evaluation, the District states that it placed Plaintiff on an Individualized Assistance Plan (IAP) in an attempt to assist her with improving her performance. (Burgess Aff. ¶ 5.)  A document entitled "IAP" with the Plaintiff's signature dated 12/14/05 is attached to Burgess' Affidavit as Exhibit B.

[5] Typed on the Plaintiff's Fall evaluation are eleven "recommendations" which include, among others, two books that the Plaintiff should read.  (Burgess Aff., Exh. A.)

did so. Id. at 81. Plaintiff stated that she did perform the recommendations set out in her ADEPT and that she submitted all of the information to Burgess. Id. at 27-28. She recalled that after she turned in documents to Burgess he stated, "Well, it look like you done a good job, and you put in a lot of work." Id.

### Alleged Discrimination by Dowling

During October and November of 2005, Plaintiff and Dowling had several discussions about several issues including classroom student behavior, and she recalled "October, November, were my worst months facing him." (Bellamy Dep. p. 34.) The Plaintiff needed assistance because there was one student who could not be controlled and another female student who did things in class that she should not have. Id. at 36. During October or November of 2005, Plaintiff met with Dowling "upstairs in his office in a small room" to discuss her classroom structure. Id. at 34. In the meeting, Dowling told the Plaintiff that her problem was that she is black. (Bellamy Dep. pp. 32-37.) Dowling stated to the Plaintiff that her students did not believe that she could work with white people's hair. The Plaintiff recalled that Dowling stated words to the effect, "well, the problem is is (sic) that you're black, and they don't feel like you can do white people's hair."[6] The Plaintiff stated that she responded "excuse me . . . hair, the difference in hair is texture; it doesn't matter." Id. at 33. Plaintiff testified that after Dowling's remark she walked around the school to look for someone in the administration to tell but that it was the end of the day and it appeared that everyone had left. Id. at 40. She drove home with hurt feelings. Id. The Plaintiff opined that Dowling believed that a black person could not teach cosmetology.

---

[6] This fact is disputed by Dowling. He recalled that he did not say anything to the Plaintiff about her capability to do "white people's hair" and that he has not said anything racist to any employee during his 38 years as an administrator or educator. (Dowling Aff. ¶ 8.)

-6-

When the Plaintiff was asked to describe any other incidents of discriminatory treatment, she stated that on the day after she had attended a teacher's training Dowling called her out of class into the hallway and he acted "insulting" towards her.[7] (Bellamy Dep. p. 37.) Dowling inquired if she knew what had happened the day before in the class while she was out and then proceeded to tell her about an incident. Id.

Based upon Dowling's conduct, the Plaintiff believes that her teaching contract was not renewed for the 2006-2007 school year due to racial discrimination. Id. at 33, 37. Plaintiff stated that several students told her that Dowling had advised them that the Plaintiff was going to be fired and that she responded to her students that the reason was she is black. Id. at 58. The Plaintiff also stated that she completed the recommendations for her next ADEPT evaluation and gave everything to Burgess but that he still went along with the recommendation for non-renewal. Id. at 31. In other words, it appears that the Plaintiff believes that Dowling decided to terminate her employment because she is black and that Burgess acquiesced to Dowling. The Plaintiff claims that the teacher across the hall, Andrea McKelvey, an African-American, was also harassed by Dowling. (Bellamy Dep. p. 49.) However, McKelvey stated that during her time at SJHS she did not experience any discriminatory treatment from Dowling. (McKelvey Aff. ¶ 3.) McKelvey did recall that the Plaintiff communicated her own concerns regarding her interactions with Dowling. Id.

### Burgess' Investigation of Dowling's Discrimination

---

[7] In her Response Brief, the Plaintiff argues that Dowling made several other derogatory remarks to her: (1) during the same meeting where Dowling stated that the Plaintiff is black, he said, "there are some things you've got to be careful of because I write your paycheck;" (2) in reference to a self report to be completed by the Plaintiff, Dowling handed it to her and stated "you may want to put those in complete sentences;" and (3) after Dowling viewed a copy of the Plaintiff's teaching certificate he "snidely commented that no one was picking on her for not having a degree in education and only attending a technical school." This court does *not* accept any of these facts as true for the purpose of this motion because plaintiff fails to present evidence to support these contentions.

-7-

The day after Dowling made the remarks to the Plaintiff about her being "black," the Plaintiff went to visit Principal Burgess to advise him of Dowling's remarks.[8]  Plaintiff told Burgess that Dowling was behaving in a discriminatory way towards her, and the Plaintiff requested a meeting to speak with Burgess about Dowling's discriminatory remarks. (Bellamy Dep. pp. 39-40, 50.) Plaintiff stated that Burgess did nothing.  Id.  She stated that, "[e]very time there was an issue, he was the principal, he was responsible, I went to him several times.  He done nothing.  Mr. Burgess didn't have a backbone for that school to stand up for nobody in that.  He was just there."  Id.  The Plaintiff appears to state that Burgess did not do anything all year to assist her with respect to the racial discrimination she endured.[9]  Id. at 42.  Accordingly, the Plaintiff decided "to go to the Board next." Id.  The Plaintiff further explained that, "[a]fter Christmas, instead of having the meeting like I request to discuss the treatment that I have been getting and the racial comments that I have been receiving, he [Burgess] asked me to resign, and said if I didn't resign, I would be forced to be fired.  I still had questions why.  He refused to meet, so I went to the District."  Id. at 30.

### Plaintiff's Spring 2006 Final Evaluation

As part of the ADEPT evaluation process, induction contract teachers are administered a final evaluation in the spring. (Burgess Aff. ¶ 6.)  On or around March 15, 2006, the Plaintiff was administered her final evaluation.  Id.  The Plaintiff's evaluation team was comprised of Principal

---

[8] This fact is disputed by Burgess who recalled that the Plaintiff was notified on April 4, 2006, by the Horry County Board of Education that her contract would not be renewed for 2006-2007.  (Burgess Aff. ¶ 7.)  Burgess recalled that "prior to Ms. Bellamy's separation of employment with the District" she reported to him that Dowling had subjected her to racial discrimination. (Burgess Aff. ¶ 9.)  In other words, Burgess did not specify when the Plaintiff notified him about the racist remark.

[9] This fact is disputed by Burgess who recalled that after the Plaintiff complained to him he met with the Plaintiff and Dowling individually and collectively to investigate the matter.  (Burgess Aff. ¶ 9.)

Burgess and Assistant Principal Moreland. (Moreland Aff. ¶ 4; Burgess Aff. ¶ 6.)  Although Dowling was not serving as Assistant Principal of SJHS at the time, at the request of the school administration he did return to SJHS to observe the Plaintiff's teaching on March 3, 2006.  (Dowling Aff. ¶¶ 6-7; Hickman Aff. at p.15.)  Dowling found no significant improvements.  (Dowling Aff. ¶ 6; Hickman Aff. at p.15.)  Moreland had performed an informal "walk through" of the Plaintiff's classroom in the Fall of 2005 and "served on her formal ADEPT evaluation team in the Spring of 2006."  (Moreland Aff. ¶ 4.)  In the formal Spring evaluation, Burgess and Moreland noted Plaintiff's deficiencies in classroom management and data analysis, and she received an overall rating of "Unsatisfactory." (Burgess Aff. ¶ 6 and Exh. C; Moreland Aff. ¶¶ 4-5.)  The plaintiff received a "needs improvement" rating on the same three TPAs that were indicated during her preliminary evaluation.  Id.  The written evaluation listed examples of why the Plaintiff scored "needs improvement" for TPAs 1, 3, and 4. (Burgess Aff., Exh. C.)

<h3 style="text-align:center">Recommendation for Non-renewal of Contract</h3>

Following the Spring evaluation, Principal Burgess met with the Plaintiff to discuss the results of her final evaluation. (Burgess Aff. ¶ 7.)  Burgess informed the Plaintiff that he would make a recommendation for the non-renewal of her contract based on her "Unsatisfactory" ratings on both the preliminary and final evaluations for the 2005-2006 school year. Id.; (Bellamy Dep. p. 31.)  Burgess gave the Plaintiff several opportunities to resign from her position; yet, she declined to accept this option. (Bellamy Dep. p. 31; Burgess Aff.¶ 7.)  Burgess stated that he made the decision to terminate the Plaintiff's employment.  (Bellamy Dep. p. 90; Dowling Aff. ¶ 7.)  On April 4, 2006, Superintendent Postlewait notified the Plaintiff in writing that she had presented Burgess' non-renewal recommendation to the Horry County Board of Education which had accepted the recommendation.

(Bellamy Dep. p. 31; Burgess Aff. ¶ 7 and Exh. D.)  The letter notified the Plaintiff that her contract would not be renewed due to her unsatisfactory job performance.  (Burgess Aff. ¶ 7 and Exh. D.)

### Plaintiff's Grievance Complaint and the District's Investigation

The District had a written policy against racial harassment.  (Document # 47, Exh. 2.)  After the Plaintiff complained to Postlewait that the decision to refuse to renew her contract was based upon race, Postlewait contacted the District's Chief Officer of Human Resources, Carolyn Chestnut, an African-American.  Chestnut arranged a meeting with the Plaintiff in April or May 2006.  (Bellamy Dep. p. 64; Chestnut Aff. ¶¶ 1-2).  During the meeting with Chestnut, the Plaintiff discussed her racial discrimination issue and the ADEPT process.  Id.  On a separate occasion, Chestnut and Plaintiff discussed the Plaintiff applying for non-certified job positions within the District.  Id.  Chestnut reported back to the Superintendent about the meetings with Plaintiff.  Id.

Around May 19, 2006, the Plaintiff sought assistance from the Conway NAACP Branch, and Abdullah Mustafa, the Chairman of Labor & Industry, wrote a letter dated May 29, 2006, to Postlewait which raised the racial discrimination issue.  (Document # 64, Exh. 1.)  The District requested that Paul Hickman, the District's Director of Special Projects, investigate the matter which he did on June 5, 2006.  (Burgess Aff. ¶ 8; Hickman Aff. ¶¶ 2-5.)  Plaintiff recalled that she had a meeting with Hickman and gave him a written statement about her discrimination claim while she left her class unattended.  (Bellamy Dep. pp. 86-87.)  Hickman, an African-American, met with the Plaintiff, Burgess, and Dowling, and Hickman concluded that there was no evidence of racial discrimination and no merit to the Plaintiff's grievance.  (Hickman Aff. ¶¶ 2-5.)  After Hickman's investigation, Postlewait wrote a letter to the Plaintiff dated June 6, 2006, to advise her that Postlewait had received the letter from the NAACP and had reviewed the matter; she had concluded that Plaintiff's contract was not renewed solely based upon unsatisfactory performance.  (Burgess Aff. ¶ 8 and Exh. E.)

By letter dated June 13, 2006, the Plaintiff requested a hearing before the Horry County Board of Education to appeal all of the decisions related to the refusal to renew her contract. (Burgess Aff. Exh. F). By letter dated June 26, 2006, Postlewait informed the Plaintiff that she had no legal right to appeal to the Board concerning the non-renewal of her contract. Id.; (Bellamy Dep. p. 67).

### Cosmetology Teacher Hired for School Year 2006-2007

Kasandra Coleman, an African-American female, was hired to teach cosmetology at SJHS for the 2006-2007 school year. (Dowling Aff. ¶ 9; Bellamy Dep. p.58.) Dowling interviewed several African-Americans and several Caucasians for the job. (Dowling Aff. ¶ 9.) Dowling made the decision to hire Coleman for the cosmetology position; he considered her prior work experience, interview, and references, and he determined that she was the most qualified candidate for the position. Id. Coleman still holds that job position at SJHS. Id.

### The Lawsuit

After receiving Postlewait's June 26, 2006, letter, the Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC"). (Bellamy Dep. p. 88.) Upon completing an investigation of the complaint, the South Carolina Human Affairs Commission issued a "no cause" determination on February 27, 2007. (Am. Comp. Exh. B). The EEOC adopted the findings of SCHAC on May 15, 2007. (Am. Comp. Exh. A). The Plaintiff filed the present action in this court on August 7, 2007, and she filed an Amended Complaint on November 7, 2007. (Document # 32.) Essentially, the Plaintiff believes that her contract was not renewed because Dowling believed that an African-American could not be a cosmetology teacher. (Bellamy Dep. p.37.)

### III.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Commc'n, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Title VII Racial Discrimination and Retaliation

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. §2000e-2(a)(1). In her Amended Complaint, the Plaintiff alleges that the Defendants treated her disparately in her employment based upon her race. That is, she argues that her one-year induction teacher contract was not renewed for the 2006-2007 school year because she is African-American. The Plaintiff further alleges that after Dowling made a racially discriminatory remark to her and she brought that to Burgess' attention the next day, her contract was not renewed in retaliation to her complaining about discrimination. In addition to suing her former employer, the Plaintiff brings suit against Dowling and Burgess individually; however, the Fourth Circuit Court of Appeals held that there is no individual liability in cases brought pursuant to the Title VII. Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998). Accordingly, Plaintiff's Title VII claims against Dowling and Burgess in their individual capacities should be dismissed.

### 1. Disparate Treatment Based Upon Direct Evidence

A plaintiff may prove a Title VII disparate treatment claim against her employer with direct evidence of racial discrimination or by using circumstantial evidence and the McDonnell Douglas

framework to create an inference of discrimination.  Lightner v. City of Wilmington, 545 F.3d 260 (4th Cir. 2008); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-86 (4th Cir. 2004) (en banc).  The Defendant moved for summary judgment on the ground that the Plaintiff has not presented sufficient evidence to prove racial discrimination using either method of proof.  In Title VII cases based on disparate treatment, proof of the employer's discriminatory intent or state of mind is critical.  Warren v. Halstead Indus., Inc., 802 F.2d 746, 752 (4th Cir. 1986).  See also Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th Cir. 2005) (noting that the court must determine whether the employer used age or sex as a basis to terminate the plaintiff or treat him less favorably, not to second-guess whether the plaintiff's termination was a good or bad business decision).  The burden of persuasion as to a Title VII violation, including the element of discriminatory intent, remains on the plaintiff.  Warren, 802 F.2d at 752.

The Plaintiff argues that she presented direct evidence of discrimination.  To demonstrate direct evidence of discrimination at the summary judgment stage, a plaintiff must "'produce direct evidence of a stated purpose to discriminate [on the basis of age[10]] and/or circumstantial evidence of a stated purpose to discriminate [on the basis of age] of sufficient probative force to reflect a genuine issue of material fact.'"  E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992) (quoting Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988)).  There must be a nexus between the alleged discriminatory statement, taken in its proper context, and an employment decision made by the employer.  Id. at 942.  To prove discriminatory animus, a derogatory remark cannot be stray or isolated and "[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination]."  McCarthy v. Kemper Life Ins. Companies, 924

---

[10] In this case, the prohibited factor is, of course, race.

-14-

F.2d 683, 686 (7th Cir.1991).  See also Jeffers v. Lafarge North America, Inc., C/A No. 2:06-3084-CWH, 2008 WL 4412377, at * 11 (D.S.C. September 23, 2008) (noting that direct evidence is when "the employer 'announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor . . .'" (citation omitted)); Lamothe v. Bal Harbour 101 Condominium Ass'n, Inc., No. 07-11321, 2008 WL 800041, at *2 (11th Cir. 2008) (finding that statements made by the supervisor contemporaneously with firing the plaintiff that "only a Haitian with brain cancer would write a note like that... get a job at $6.50 at McDonald's like the other niggers" are direct evidence of discrimination based upon race and national origin).  A plaintiff must have sufficient evidence that a prohibited characteristic, such as race, was **a** motivating factor in the employer's decision to take an adverse employment action.  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc).  "An employer can no longer avoid liability by proving that it would have made the same decision for nondiscriminatory reasons.  Instead, liability attaches whenever race 'was a motivating factor for any employment practice, even though other factors also motivated the practice.'"  Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995) (quoting 42 U.S.C. §2000e-2(m)), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

In the light most favorable to the Plaintiff, it appears that Dowling made a statement with racial content to the Plaintiff in the Fall of 2005.  During a discussion about the Plaintiff's classroom structure and her job performance, Dowling stated words to the effect, "well, the problem is is (sic) that you're black, and they don't feel like you can do white people's hair."  There can be no dispute that the words "you are black . . . white people's hair" have racial content.  If the statement "you are black . . . white people's hair" is said by an employer during the firing of an employee then direct evidence of racial discrimination clearly would exist.  E.g., Signal v. Gonzales, 430 F.Supp.2d 528,

540 n.5 (D.S.C. 2006) (giving examples of direct evidence of discrimination – a management memo stating 'fire Early - he is too old' and a paper stating 'discipline Thomas, she is black.').  In other words, sometimes racist words themselves indicate an intent to discriminate while other words themselves do not show a racist attitude so there must be additional evidence that the protected trait actually motivated the employer's decision.  E.g., Jordan v. Alternative Resources Corp., 458 F.3d 332, 341 (4th Cir. 2006) (noting that a racist comment by a person revealed that person to be racist).

In this case, there is evidence that Dowling was a decision-maker who determined that the Plaintiff's contract should not be renewed and that Dowling believed that the Plaintiff could not work with white people's hair because she is black.  To survive summary judgment, the Plaintiff "must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer."  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 291 (4th Cir. 2004) (en banc) ("an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision.").  Dowling was on the Plaintiff's ADEPT team in the Fall and conducted several classroom observations.  He was brought back to SJHS in March 2006 to conduct the formal evaluation of the Plaintiff's classroom.  Dowling determined that the Plaintiff's job performance had not improved.  The exact involvement of Dowling in the decision-making process is not apparent from the record.  It is clear that he was part of the evaluation team for the December evaluation, and that he participated in the evaluation process for the March evaluation.  It is clear that his role for the March evaluation was to observe the plaintiff.  It is unclear to what extent Burgess relied on, or was influenced by, Dowling's input in deciding to not renew her contract, continue her for another year, or offer her an annual contract.  Dowling's statement may not bear directly on the precise adverse employment decision – to not renew her contract – but did bear directly

-16-

on her ability to perform her job and was followed by two negative evaluations and ultimately the decision to not renew her contract.  Thus, plaintiff presents direct evidence or sufficiently probative circumstantial evidence to create a genuine issue of material fact as to whether race was <u>a</u> factor in the adverse employment decision.

The court is cognizant that stray or isolated racial remarks by a decisionmaker if "'... unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden' of proving discrimination." <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 291 (4th Cir. 2004) (en banc) (quoting <u>Price Waterhouse</u>, 490 U.S. at 277 (O'Connor, J., concurring)).[11]  Here, part of Dowling's statement – that the students believe that you cannot do white person's hair – could be construed to mean that Dowling made an assumption as to why the Plaintiff did not have proper control over the students' behavior in her classroom.  That is, Dowling perceived that the students lacked confidence in the Plaintiff's ability to work with white people's hair which is different from whether Dowling himself believed that the Plaintiff could work with white people's hair.  However, because Dowling added the remark -- the problem is that you are black – the entire statement taken in the context that Dowling was discussing the Plaintiff's poor job performance creates an issue of fact

---

[11] <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), was superseded by statute as explained in <u>Hill v. Lockheed Martin Logistics Mgt., Inc.</u>, 354 F.3d 277, 284 (4th Cir. 2004) (en banc).

as to the intent of the statement.[12]  Therefore, summary judgment should be denied on the Plaintiff's Title VII disparate treatment claim.

### 3. Retaliation Claim

The Plaintiff also brings a Title VII claim for retaliation.  Title 42, Section 2000e-3(a) of the United States Code provides, in relevant part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her (including actions that a reasonable employee would have found to be materially adverse in that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination), and (3) a causal connection existed between the protected activity and the adverse action.  Matvia v. Bald Head Island Mgmt, Inc., 259 F.3d 261, 271 (4th Cir. 2001); Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

A plaintiff may engage in protected activity under either the "opposition" clause or the "participation" clause of § 2000e-3.  "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim."  Laughlin v. Metropolitan Washington

---

[12] The temporal distance between Dowling's racial statement in the Fall and the Plaintiff's contract non-renewal in the Spring gives the court slight pause.  However, because the structure of Plaintiff's employment with the District seemed to be that she could not have been terminated until the end of the school year then if Dowling intended to fire the Plaintiff because she is black he could not have done so until the Spring.  See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that the end of an academic school year is a natural decision point for employers).  The temporal proximity between the racial statement and the employment decision should be a factor for the jury to consider.

Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). However, a plaintiff must show she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. See Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003). "The inquiry is therefore (1) whether [plaintiff] 'subjectively (that is, in good faith) believed' that the [defendant] had engaged in [an illegal practice], and (2) whether this belief 'was objectively reasonable in light of the facts,' a standard which we will refer to as one of 'reasonable belief.'" Peters v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003) (citing Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir.2002)). See also Jordan v. Alternative Resources Corp., 458 F.3d 332, 338-40 (4th Cir. 2006).

   In this case, in the light most favorable to the plaintiff, Dowling made the statement and she complained to Burgess. Because Dowling stated that the Plaintiff's problem [with her job performance] was that she is black, a reasonable person could believe that she was being discriminated against by her supervisor based on race. Therefore, the Plaintiff does have evidence to prove the protected activity prong. The District does not dispute that there is evidence of the second element because it did take adverse employment action against the Plaintiff when it did not renew her contract. Thirdly, the Plaintiff must present evidence of a causal connection. In the light most favorable to the Plaintiff, after Dowling made the racial remark she complained to Burgess the next day. Subsequently, Burgess requested that she resign and ultimately terminated her employment. Accordingly, the Plaintiff can establish a prima facie case of retaliation.

   If a plaintiff can show a prima facie case, the burden shifts to the employer to proffer a non-retaliatory reason for its action. Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006). Burgess, Moreland, Cox, and Dowling submitted evidence that the Plaintiff's job performance was lacking or unsatisfactory especially due to poor control of the classroom and problems with the computer grading system and that her performance had not improved by the Spring. Thus, the employer produced

evidence of a non-retaliatory reason for its action, and the burden shifts back to the Plaintiff. King v. Rumsfeld, 328 F.3d 145, 151 (4ᵗʰ Cir. 2003). Then a plaintiff must show by a preponderance of the evidence that the employer's proffered reason is pretextual. Baqir, 434 F.3d at 744. Plaintiff must show that a reasonable jury could believe her explanation of retaliation. Love-Lane v. Martin, 355 F.3d 766, 788 (4ᵗʰ Cir. 2004).

It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[13] Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000) (quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . ." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280. Even a reasoned decision based on incorrect facts is not evidence of pretext. Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7ᵗʰ Cir. 1987).

---

[13] "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4ᵗʰ Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

Plaintiff fails to produce evidence that she was performing at a satisfactory level. Apart from her own self-serving statements that she performed the ADEPT recommendations for job improvement, the Plaintiff does not have sufficient evidence that she was meeting the District's expectations. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (noting that evidence that co-workers and a plaintiff believed that the plaintiff was doing a good job is not relevant to prove whether management honestly believed that the plaintiff was doing a good job). An employee's personal beliefs, conjecture, and speculation regarding her own performance cannot establish that her job performance satisfied the employer's legitimate expectations. Id. at 150. The only other possible evidence that the Plaintiff was meeting her employer's expectations is the Plaintiff's testimony that after she turned in documents [presumably showing that she had completed the ADEPT recommendations] to Burgess he stated, "Well, it look like you done a good job, and you put in a lot of work." However, Burgess' statement taken in proper context does not show that he actually evaluated her job performance and believed that it had improved. The District, on the other hand, presented substantial evidence that the Plaintiff was not meeting legitimate job performance expectations. In addition to Dowling's affidavit, Burgess, Moreland, and Cox submitted affidavits that explained why the Plaintiff was not meeting the District's expectations. Also, copies of the Plaintiff's Fall and Spring evaluations are attached to Burgess' affidavit, and they provide detailed reasons why the Plaintiff received "needs improvement" ratings for three TPAs. Except to conclusively state she disagrees with the evaluators' findings, she fails to present any specific facts to refute them. Thus, she fails to create a genuine issue of material fact as to whether or not her performance was satisfactory. Based on the record presented, she was not. In order to establish pretext, plaintiff must show "but for" defendant's intent to retaliate her contract would have been renewed. Hopkins v. Baltimore Gas

-21-

& Electric Co., 77 F.3d 745, 755 (4th Cir. 1996); Conkwright v. Westinghouse Elec. Corp., 933 F.2d

231, 234 (4th Cir. 1991).  Accordingly, plaintiff fails to show pretext and summary judgment should

be granted on the Plaintiff's Title VII retaliation claim.

      **B.**      **Racial Discrimination in violation of 42 U.S.C. §§ 1981 and 1983.**

In her Amended Complaint, the Plaintiff alleges that the Defendants violated 42 U.S.C. §§

1981 and 1983 due to their racial discrimination against the Plaintiff.  The Defendant argues that the

Plaintiff cannot proceed with a violation of § 1981 as a matter of law because § 1983 is the exclusive

remedy against state actors who violate § 1981.  See Dennis v. County of Fairfax, 55 F.3d 151, 156

(4th Cir. 1995) (finding that the § 1983 requirement that a plaintiff show an official policy or custom

of discrimination controls in a § 1981 action against a state entity and that § 1983 is the exclusive

federal remedy for violation of rights guaranteed under § 1981).  The Plaintiff in her Response Brief

does not appear to dispute that § 1983 controls her claims of racial discrimination and violation of her

equal protection rights.  The Plaintiff does not present evidence that the Horry County School District

had a policy or custom of racial discrimination except for her belief that McKelvey, another African-

American teacher, was also harassed by Dowling.  The Plaintiff gave no factual details about how

McKelvey had endured racial discrimination.  In contrast, McKelvey testified that she did not endure

discriminatory treatment from Dowling, and the Defendants entered into evidence the District's policy

against racial discrimination.  The evidence further reveals that the District hired employees with

African-American and Caucasian backgrounds and that several employees in high-level positions were

African-American.  Accordingly, there is not sufficient evidence that the District had a policy or

custom of racial discrimination, and, therefore, the Defendants should be granted summary judgment

on the Plaintiff's second and third causes of action.

**C.    Freedom of Speech violation pursuant to 42 U.S.C. § 1983.**

The Plaintiff alleges that "the Defendants violated her right to free speech and to criticize the

government by threatening and then punishing her for criticizing the District's alleged discriminatory

practices." (Document # 60 at p.5.)  The Plaintiff argues that her speech was protected and a matter

of public concern and that she "attempted to bring this issue [racial discrimination] to the public by

contacting the NAACP." Id. at 6.  The Plaintiff argues that she raised concerns regarding the treatment

of one other black female teacher.  Id.  To prove her cause of action, the Plaintiff must establish three

elements: (1) her speech was protected; (2) the defendant's alleged retaliatory conduct adversely

affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between

her speech and the defendant's retaliatory action.  Blankenship v. Manchin, 471 F.3d 523, 528 (4th Cir.

2006); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000) (noting that plaintiff must

make a showing of adversity to prove a retaliation claim).

While the Plaintiff and Defendant argue about whether the Plaintiff's speech involved a matter

of public concern and was protected, the court need not decide that issue.[14]  There is no evidence in

the record to establish the third element – that a causal relationship existed between the Plaintiff's

speech and the Defendant's alleged retaliatory action.  The Plaintiff's alleged "protected speech" in

May of 2006 – of complaining to the NAACP[15] about the racial discrimination she had endured –

---

[14] The Defendant relies on case law which holds that a public employee's complaint about discrimination is usually not a matter of public concern.  See Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134 (4th Cir. 1990); Campbell v. Galloway, 438 F.3d 258 (4th Cir. 2007).

[15] To determine which statements by Plaintiff are alleged to be "protected speech," the court relied on the Response Brief.  (Document # 60.)  In addition to Plaintiff's statements to the NAACP, the Plaintiff argues that her speech was a matter of public concern because another teacher at SJHS was involved.  While it is true that in her deposition the Plaintiff mentioned that she believed that Dowling had harassed McKelvey, an African-American teacher, Plaintiff did *not* testify that she had ever discussed the alleged discrimination endured by McKelvey with any of the Plaintiff's supervisors

4:07-cv-02727-TER    Date Filed 02/18/09    Entry Number 92    Page 24 of 25

occurred *after* her contract had not been renewed. In other words, there is no evidence that the Defendants knew that the Plaintiff had spoken with the NAACP at the time the District decided not to renew her contract. Therefore, the Plaintiff has not presented a material issue of fact on the third element, and summary judgment should be granted to the Defendants on the fourth cause of action.

V.    **CONCLUSION**

In light of the above analysis, it is recommended that Defendant's Motion for Summary Judgment (Document # 47) be denied in part and granted in part. Specifically, it is recommended that summary judgment be granted against plaintiff's claims for retaliation under Title VII, her claims under §§ 1983 and 1981, and her claims against the individual defendants, and that summary judgment be denied against plaintiff's claim for disparate treatment under Title VII.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 18, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice contained on the following page.**

---

or anyone else. In other words, there is no evidence that the Plaintiff made public statements about McKelvey enduring discrimination. In fact, McKelvey herself stated that during her employment at SJHS she has not experienced any discrimination by Dowling or any other administrator.

-24-

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P. O. Box 2317

Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).